Our final case for argument today is 2-1-1114, Louisville Ladder v. Werner Company. Mr. Wright, please proceed. Good morning. May it please the Court. My name is Terry Wright and I'm here on behalf of the appellant Louisville Ladder. The board erred in this case in their constructions as it turns an entirely open face and extending upwardly. The very purpose of the end rail covers described in the 731 patent that is at issue are to protect and reinforce the bottom ends of the ladder while still allowing for the lowermost portion of the ladder rail in the interior to be easily viewed and inspected. But the board's construction of an entirely open face and extending upwardly completely eviscerated those fundamental advantages of the 731 patent. It seems to me one of the problems you may have is that the language entirely open face is followed in the claim itself by saying set open face suitable for exposing a portion of the ladder rail. So you don't have to even look to the spec or the embodiments or whatever. But certainly in the claim language, it seems to have modified, arguably, the word entirely open face. Correct? Correct. And it's correct that the portion isn't specifically disclosed in that claim language. But our position is that we can't read the two of those in isolation. You necessarily have to look for the meaning of entirely open face, which we feel like is ambiguous at best. And so you wouldn't necessarily have to go back to the spec and to the prosecution. I don't understand. I'm talking about reading the claim language that I've cited as a whole. Yes. And not parsing entirely open face from the remainder of that sentence. That's correct. Right. Well, our position is that entirely open face is ambiguous here. Reading that claim language as a whole. Well, it's not ambiguous when you read it in light of the rest of the claim language. That's the question. Right? Right. Right. And I guess, again, our position, though, is that entirely open face, even when you read it in respect to the rest of the claim language and the fundamental advantage that's offered by this invention, entirely does need some interpretation. Going to entirely open face, when you look at the specification itself, the board errs by only ignoring or ignoring the only portion of the specification that provides guidance as to what should be the open face. Well, there's one embodiment that goes the way you want to go, right? Well, there's figures three and nine. Figure three has a small web engagement member within it. We would argue that is an entirely open face that allows for sufficient inspection. But to the extent that's not an entirely open face, the figure nine certainly shows that. The specification includes a passage that makes readily apparent what a substantially open face is. The specification makes clear that in a substantially open face, that shell doesn't extend upwardly beyond the upper surface of the face. The rail flange retainers don't extend entirely along the respective sidewalls, and thus expose the portions of those flanges of the ladder rail when they're engaged with the rail flange retainers. And, third part, the web engagement member does not extend entirely along the exterior wall. So it exposes a portion of the web when that web is engaged with the slot. But more significantly, we think that portion of the specification then concludes by indicating that the substantially open interior face of the shell allows a ladder user to inspect... It's the column six, line 66, and it continues on to column seven, line 14. But that portion of the spec concludes by indicating that what's important here is that open face allows for adequate inspection of the ladder rail. You know, in addition to... Is there any definition of adequate inspection? There's not. It's discussed in the background in terms of inspecting it for cracks and damage at the bottom of the ladder rail. And in our experts' brief, we indicated that ladders have undergone kind of a transition from aluminum to fiberglass. Fiberglass is a more resilient material, but it still has significant damage at the bottom of the ladder rails, from impacts or flexing of the particular rail walls. So the solution to that was to reinforce the bottom end of the ladder rail. And the 731 patent is directed towards such an embodiment, and it improves over existing ladder rails because it allows for this inspection. So in addition to ignoring that portion of the specification that kind of makes clear at least what a substantially open face is, the board also further errors in failing to recognize that the prosecution history also makes clear what portion is being exposed. And we felt like that the portion being exposed necessarily includes the lowermost interior surfaces in the corners based on that prosecution history. The prosecution, the claims were amended during prosecution to recite an entirely open face. Entirely open face, those three words are not found within the patent itself. But during prosecution, the claims were amended to overcome a reference that's referred to in the briefing as heard. Heard was directed towards a foot for a ladder rail that covered the lowermost interior portions, and it has two oppositely disposed sidewalls and two endwalls that basically is applied by pushing it over the end. The arched sides in heard were configured to extend on opposite sides of the ladder, and they turn inward at one point to basically pinch their foot onto the end of the ladder rail and secure that foot. In heard, though, its construction allows the corners to be exposed. It wasn't heard about the number of walls and not what specific portion of the ladder rail must be exposed? The walls were part of it, but I believe the portions being exposed was a large part of it as well. Heard allows for the corners of the ladder rail to be exposed, but that face of the lowermost portion was still entirely covered in heard. So what the applicant did in this instance was to amend the claims from a substantially open face to an entirely open face, and then the patent was allowed. In its response when they submitted that amendment, they indicated that the entirely open face was meant to describe the face of the shell by which the bottom surface of the ladder rail can be exposed for inspection and proper fitting. They also noted that although heard showed so sides, which does expose a small portion, the applicant contended that none of those sides would clearly show up at the bottom edge of the ladder rail or improperly displaced from the bottom surface. So what we're really looking at there, I think, is that the prosecution history of the 731 patent clearly distinguished from a foot such as that found in heard, which exposed a small portion of the ladder rail, from what's in the 731 patent, which allows that lowermost interior surface in the corner of the ladder rail to be sufficiently exposed for inspection and fitting. Well, I mean, when I'm looking at the actual prosecution history and I'm on page 803 and looking at your actual response to the office action, applicant respectfully contends that with this definition there is also no portion of the tread which is disposed within said embossed and said hole. Where is it that you, is it that at the top paragraph, you claim 96 further recites an entirely open face, where is it in this response that you think that you clarified the language entirely open face such that it should be read more narrowly the way you're arguing as opposed to the broader way the board interpreted it? Yes, Your Honor. I think I'm looking on 804. Okay. Under the quoted passage right there, it says, although the HERD patent does show sides which expose a small portion of the ladder rail, applicant respectfully contends that none of those sides would clearly show up the bottom edge were improperly displaced. And then, you know, the paragraph above that, too, it talks about the term entirely open face has been used so as to describe the face of the shell by which the bottom surface of the rail can be exposed for proper inspection and fitting. And just to be clear, you don't think the board's construction allows for that? I mean, the board's construction does, right? The board's construction is broader, so it allows everything you want to be covered, but it also allows for more things. I think the issue we took with the board was under the board's interpretation, so long as some portion of the ladder rail is exposed, that would be sufficient to meet their definition. Because, wait, isn't it correct that under the board's construction, these purposes that are articulated on 804 and also mentioned in the patent, namely exposed for inspection and proper fitting, would be met also? Is that right? I think the issue with the board's construction here is that as long as, and the board was in some way ambiguous in adopting this, but as long as the face on the far side of the interior of the cover is open, that's sufficient. But that ignores the fact that under the board's definition, anything could be in between that face of the cover and completely block the view of the ladder rail. But if you could see some small portion of it, then that's sufficient under the board's view. And we think that's incorrect because of these passages, at least in the prosecution. Because if you could only see some small portion of it, it wouldn't be available for inspection and proper fit. Right. I mean, the damage to a ladder rail occurs at the bottom ends of the ladder rail and in those corners. You don't want to be inspecting something when it propagates multiple inches up from the bottom. And that was our issue primarily with the board's reasoning when it talked about the Plotner patent. The Plotner patent was an issue cited by the board for invalidating the entirely open face limitation. It has cutouts or windows, but they're multiple inches up from the face of the shell. So because of that, we don't feel like that can meet the entirely open face limitation because it's not where the boot is located and it completely obstructs that interior face. Do you want to touch upon your extending upwardly limitation? I know it only is Claim 10, right? Right. Separate. Correct. So the other claim construction issue we felt like was an issue with the board's decision was the extending upwardly limitation. The board determined that the phrase extending upwardly would not require the rail flange retainers to be integral with the shell, but we felt like that also ignores the plain language of the claims and it also ignores the intrinsic evidence that's offered by the specification. What do you mean by integral or integral? A unitary construction, a one-piece construction. So the rail flange retainers are... So two pieces that are bolted together would not qualify? Correct. Correct. Under our interpretation. The claim language we feel like in 10 requires an integral construction. It recites a cover for an end of a ladder rail that comprises a shell, and in accordance with standard patent claim structure, it indents and then further recites that that shell comprises a rail flange retainer. So in other words, Claim 10 specifically recited that the rail flange retainer was a part of the shell, and then it goes on to further recite that the rail flange retainer extends upwardly from the bottom of that very same shell. To the extent there is some ambiguity in the language of Claim 10, we also felt like one skilled in the art reading the specification would necessarily understand the shell and its associated rail flange retainers are a one-piece integral construction. The 731 patent describes the shell as including an exterior wall, an interior wall, two side walls, and a lower wall or base, but the rail flange retainers are described as being part of that side wall and as assisting with the alignment of the ladder rail once it's in there. Secondly, we also feel like it would be clear to one ordinary skilled in the art that the shell is a unitary construction. Not only is that all that's described in the specification, but that specification only describes manufacturing methods that produce that unitary construction. There's no disclosure whatsoever in the 731 patent of anything less than a unitary construction. The figures in the 731 patent only depict a one-piece shell, and in describing again how that shell is manufactured, the specification only references techniques that are capable of producing that unitary construction. Except that your specification in that same section goes on to say that the shell can be made by any manufacturing process and that you're not limited to the ones disclosed herein. So the fact that you only disclose processes that produce an integral, single-piece shell, but then you go on to say, let me be really clear, this shouldn't be read as a limitation. Well, I think we get to that point when, if we're looking at what Claim 10 references, Claim 10 we feel like is very straightforward and includes that the rail flange retainers are part of that shell. But then if we go back and look at the spec, almost the entirety of the spec here is directed to such one-piece unitary construction. You say directed to. There's nothing in the spec that suggests that there's sort of an advantage or a benefit to a single unitary construction as opposed to two pieces. I feel like you're just trying to read the limitation from Figure 8 into the claim. Right. Would you like me to address that? Sure. Go ahead. We're not trying to import that limitation into the claim. We're just trying to interpret the specification, I guess, as best we can based on… You don't interpret the specification. You interpret the claim. Right. We're trying to interpret the claim as best we can in light of what's shown in the specification. Okay. Thank you. We'll save the rest of your time for rebuttal. Mr. McNair? Good morning, Your Honors. May it please the Court. The Board found, based on substantial evidence, that Claims 8 to 16 and 19 and 20 are obvious, were obvious, in view of four prior art references, beginning with Louisville's own prior art catalog, which was not disclosed to the Patent Office during the original prosecution. The Board correctly construed the claims based on the plain language of the claims, the specification, and the file history, and rejected Louisville's efforts to read in limitations, going to some of the questions that Judge Moore and Judge Prost asked this morning about reading in limitations that are inconsistent with the plain language of the claim. The Board rejected those arguments. Louisville had the opportunity during the original prosecution or during the proceedings below to propose amendments to the claims, to add these limitations that they seek to now add improperly to its claim construction. Well, they did, in fact, add. The entirely open-faced limitation was added during prosecution, and their argument on page 804 is they made it clear to the Board when discussing an entirely open face, it has to be such that the bottom surface of the ladder rail can be exposed for inspection and proper fitting. And their argument is the Board's very broad construction covers lots of embodiments which wouldn't allow for that. But the Board's construction follows exactly the language that was in the claim, which was that the entirely open face exposed a portion of the ladder rail. True, in the file history, in the response to the examiner's rejection, they did refer to exposing a bottom edge of the ladder rail, and we address that's really the surface that points down on the ladder rail. Now they're really pointing to a different surface, which is using the words. What Louisville asked the Board to include by its interpretation was that it exposed the lowermost portion and corners of the ladder rail. Those words appear nowhere in the claims, nowhere in the specification, and nowhere in the file history that Louisville cites. But in any event, given what they did say in that response to the Patent Office, they simply... it is not a clear and disavowal disclaimer of scope, particularly when read in light of the plain language that they did add by amendment, which simply says expose a portion of the ladder rail. And so do you think that a portion of the ladder rail is exposed in every embodiment that would be swept into the Board's broader construction? Yes, because that was the Board's construction, that there must be a portion of the ladder rail exposed. And really, I should clarify, there were really two disputes, two sub-disputes, when it came to the entirely open face limitation. There is the structural limitation, entirely open face. What does that mean? What is the face? And then there is the function recited by that structural limitation, which is to expose a portion of the ladder rail. And the Board addressed both. On the functional piece, the Board said the claim simply requires exposing a portion of the ladder rail, not any particular portion. And Louisville's argument that it must expose a lowermost portion in the corners of the ladder rail is simply not supported by the claim language or the specification or this portion of the file history. On the structural piece, the entirely open face, the Board addressed the question of what is the face and read Werner's interpretation as what the Board called the more natural interpretation of the word face, which is that face takes on its geometric meaning, that it's the side of the cover, and that that side must be entirely open. And looked, I think, to Louisville's proposal that that face could be anywhere throughout the volume of the cover and said, well, that's even broader. And so we see no problem with adopting Werner's view because Louisville's interpretation would be even broader and even more detrimental to the obviousness arguments if we went that direction. What voice do you give to the prosecution history, page 804 of the appendix? It is commentary, but again, the law requires that if you're going to disclaim something that is not specifically recited in the claim through prosecution history disclaimer, it must be clear and unambiguous. It must be absolutely clear to the public to serve the public notice function. What is your interpretation of that page that gives it any meaning at all? Well, I read it as an example, that it must expose a portion, the entirely open face in the claim must expose a portion of the ladder rail. And there's an example here provided that a portion that could be exposed is a bottom edge of the ladder rail. And I'd also note that the purpose that is recited here in the file history in this response to the Patent Office is not exactly the same purpose that Louisville has urged throughout these proceedings. They are emphasizing that you need to expose the lower and more proportionate corners because that's where the cracks will begin in, for example, a fiberglass ladder rail, which is true, that's undisputed, that is where the cracks will begin. There's also evidence that the cracks must propagate up several inches before they become a problem. But the purpose that's recited in the response to the Patent Office has nothing to do with cracks or wear and tear. It has to do with whether the rail is seated fully down into the cover. In other words, has the cover been properly installed? I'm looking here again at page 804 where it says if a bottom edge of the ladder rail were improperly displaced from the bottom surface of the shell. And skipping ahead to the invalidity argument, there's no dispute that in, for example, the Louisville catalogs, you see the bottom corners of the rail inside that cover. This whole prosecution history was the effort of Pat Noner to differentiate between Hurd. So what relationship is there between the Hurd reference and what we're talking about now on page 804? You're right, Judge Grossman, I think you alluded to this before, that Hurd showed four walls. It showed a cover with four walls that wrapped all the way around the ladder rail, and so it didn't expose much of anything in terms of seeing the ladder rail exposing a portion. And that's why I think that the claim language that Louisville added at that point by amendment, that there be an entirely open face. Hurd didn't have anything remotely close to an entirely open face. All four faces were occluded substantially. But also that it exposed a portion of the ladder rail. And that was something Hurd did not do, and by reciting that, the applicant overcame the Hurd reference. If you permit, I'll go on to the second claim construction argument, which was the upwardly extending. And here, once again, Louisville's trying to import through claim construction limitations that it could have, but chose not to propose by amendment below. And what they'd like to import is the word integral, or one-piece construction, as you discussed, Judge Ronto. Can I just clarify something, and I'm not sure whether this matters. The full metal boot in the Louisville catalog is actually two separate pieces. It is. Like a shoe and a shin guard. Yes. The shin guard maybe extends upwardly from the shoe, but it doesn't even touch it. I'm not sure whether they touch, Your Honor, but they're certainly two different pieces. There's no dispute about that. And Mr. Schmidt, one of Louisville's... Isn't there some distance between a single piece and integral? Now, this may be unimportant, because I think, as Mr. Wright indicated, his client's position was integral means formed in a single unitary process, not two things bolted together. So I don't think that his client presented to the board a position that, at a minimum, the vertical piece needs to be connected to the shoe piece. But that would exclude the full metal boot, right? Yes. My understanding of Louisville's argument all along has been to use integral and one piece interchangeably. They mean the same thing, and both of them exclude the full metal boot. That's contrary to the evidence of record, the substantial evidence that the board relied on, including the fact that Mr. Schmidt acknowledged that one of ordinary skill in the art knew... And again, I'm sorry. Mr. Schmidt was one of Louisville's longtime employees and an expert they presented, that those of ordinary skill in the art would have understood that you could use plastic for this boot or you could use metal, and depending on the material you chose and the strength and the volume of the material you used, you might want a one-piece construction for extra strength or you might not need it in the case of metal. Is your position that the thing that must upwardly extend must actually be connected to the thing from which it upwardly extends? Our position is the opposite of that, Your Honor, no. Our position is that there is no requirement that it be integral or one piece. It simply must extend upwardly from, and in, for example, the case of the full metal boot... Perpendicular to? I'm sorry? It must just be perpendicular to, even if you could drive a truck through the gap? So, perhaps, I mean, if it were connected to another ladder, of course, it would not extend upwardly from, but within the relative distance that is shown in the full metal boot, that those rail plans retainers do extend upwardly from. For the convenience of assembly and because metal is strong, the full metal boot discloses a two-piece construction. I'm a bit concerned with what you're saying in response to Judge Toronto. There's a difference between a two-piece construction and two separate pieces that aren't part of the same construction. But you're saying that the pieces that extend upwardly, like, I'll refer to them as the shin guards because it seems like a good way to do so, don't have to be connected as part of the bottom, which is part of the shell? I mean, these are all, the claim defines a shell and includes all of these components as part of the shell. I don't think the court needs to reach that question because in the prior art, they are connected. So, in the full metal boot, they are connected with bolts through the lateral rail. So, the inside piece, that trapezoidal piece that you can see on the inside of the lateral rail, connects through to the shell on the outside. So, in the case of the full metal boot, they are connected. It is a two-piece construction where the two pieces are connected to one another. I'm sorry, what's the bottom piece in the full metal boot? I thought, is that the sole? The base, well, so there is the base of the shell to which the tread is connected. And then the base of the shell has the trapezoidal member that extends up. So, in the full metal boot, there is a little angle piece, an L-shaped piece that goes from the base to the web, as you call it. Somebody really should have explained what web is. It took, literally, it took me an hour to figure out what that meant. And it's that little L bracket that is connected to the base and connected through the web to the shin guard. Correct. And collectively, they provide... So, it doesn't matter that there's actually a little gap between the shin guard and the base. No, because it is still, that is the cover. That is the cover that is providing all of the functions required by the claims. And because it's metal and it's strong and it's easier to assemble that way, it is presented in two pieces that are bolted together. But one of ordinary skill in the art would have known, as the evidence shows, that you can use, you can build a cover out of metal, you can build it out of plastic, you can use one-piece construction, you can use two-piece construction, and you would make those decisions well within the knowledge and skill of one of ordinary skill in the art based on the parameters of a particular design and the strength of the material and the amount of the material that you choose. There is one other issue with respect to the rail-planned retainers and the disclosure in the Full Metal Boot prior art reference, the Louisville catalog, that Louisville waived, although they didn't present it until their certified. It was addressed during the oral argument, but the board found that it had been waived, and that is the setback between the edge of the base and the rail-planned retainers. And the board found that substantial evidence supports that that was disclosed, even though Louisville had waived the argument and presented it too late. The last two issues that Louisville challenges with respect to the obviousness findings are both also supported by substantial evidence. The first one is the bond, the board construed bond to require a chemical or physical engagement that includes a portion of the shell and a portion of the tread and excludes mechanical fasteners. Mr. Verhalen, the expert that Werner presented, provided extensive testimony interpreting the photo shown in the Werner brochure and explaining for three reasons why the photo shows an attachment that is not with mechanical fasteners. That photo shows a black tread under a ladder rail cover, and it shows six pieces extending up through the top of that shell. And Mr. Verhalen explained that they stick up too far, there are too many of them that are spread out in a way that would indicate... These are rubber, little rubbery plugs. That's exactly right. That hold by friction on the disc through which they poke. That's exactly right, Your Honor. So that was the question of the bond. The board credited Mr. Verhalen's testimony of that. Neither Louisville nor its expert, Dr. Kwan, challenged the details of that. Dr. Kwan just looked at the photo and said, I can't tell. And the board credited Mr. Verhalen's testimony which provides substantial evidence to support that conclusion. The board also credited Mr. Verhalen's extensive testimony on the obviousness and the motivation to combine these references. Louisville's arguments basically amounted to dismissing Plotner as having no relevance whatsoever to the case. I know Plotner discloses, there's no dispute, Plotner discloses six of the features that are recited in the claims. The board credited Mr. Verhalen and substantial evidence supports that conclusion. If there are no further questions, Your Honor, I'll thank you for your time. And we submit that the board's decision should be affirmed based on the substantial evidence that supports it. OK, Mr. Wright, you have some rebuttal time. Please proceed. Thank you, Your Honor. Just have a couple quick clarifications here. When we continue to talk about face, I think it's important to recognize that the board in deciding face prioritized extrinsic evidence in the form of a dictionary definition of face in that plane instead of choosing to look at the specification and the prosecution history. Warner is fond of indicating that the claim construction we proposed is not supported by the specification, but as we indicated, that column six to column seven paragraph that bridges those two columns clearly indicates what a substantially open face is, and then the prosecution history is what gets us to entirely open face. The other point we would make here, too, extending upwardly shouldn't be regarded as just positioned in relation to something. The claim language doesn't indicate that. If the rail plant retainer were a separate part and were just positioned in relation to the rest of the shell, it would be recited separately. But it's not. It's recited as part of that very same shell. The last point we would make, once you've reached those initial conclusions about what entirely open face should mean and what extending upwardly means, it becomes very clear that the Lobel catalogs and that full metal boot, as well as the Plotner reference, don't show an entirely open face, and they don't show the rail plant retainers extending upwardly or a one-piece unitary construction there. The full metal boot, as you just discussed, is a two-piece construction. It's an L-shaped bracket that fits on the interior of a rail, and there's also a sleeve that goes on the back. It's then bolted together, so there's a large gap between those two pieces. One thing that no one has mentioned, but it kind of bothered me about your integral one-piece construction concept, is the claim itself expressly says a shell form of at least one material. Your integral unitary construction makes it seem like you want the whole thing to be molded and created of a single material. But the claim itself contemplates expressly the possibility that the shell could be formed with multiple different materials. That would necessarily require those different materials to be affixed together somehow. Yes, and I think I'm over time. No, no, go ahead. You went over by 16 seconds. So I think one explanation for that is that we do indicate some molding processes and some extrusion processes that you could have blends of different materials that produce that one-piece unitary construction. So I presume that that's what it's getting at, but I don't have a better answer. That's fine. I thank both counsel this case is taken under submission. All rise. Court is adjourned until tomorrow morning at 10 AM.